**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

───────────────────────────

COMODO HOLDINGS LIMITED,

    Petitioner,                 CIVIL ACTION NUMBER:

    v.                       2:18-cv-13755-JMV

DAVID UNTRACHT,           Motion Hearing

    Respondent.

───────────────────────────

COMODO HOLDINGS LIMITED,

    Petitioner,                 CIVIL ACTION NUMBER:

    v.                       2:19-cv-436-JMV

WILLIAM GIARUSSO and      Motion Hearing
TD BANK, N.A.,

    Respondents.

───────────────────────────

    Frank R. Lautenberg Post Office and Courthouse
    Two Federal Square
    Newark, New Jersey  07101
    May 28, 2019
    Commencing at 11:00 a.m.

B E F O R E:           THE HONORABLE JOHN MICHAEL VAZQUEZ,
                 UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

    LOWENSTEIN SANDLER LLP, BY:
    MATTHEW M. OLIVER, ESQ.
    JARRETT R. SCHINDLER, ESQ.
    One Lowenstein Drive
    Roseland, New Jersey  07068

        appeared on behalf of the Petitioner,
        Comodo Holdings Limited;

        */S/ Lisa A. Larsen, RPR, RMR, CRR, FCRR*
              *Lisalarsen25@gmail.com*
                 (630)338-5069

1    <u>**A P P E A R A N C E S:**</u> **(Cont'd.)**

2         QUINN EMANUEL, BY:
          CHRISTOPHER D. KERCHER, ESQ.
3         LAUREN ANN VALLE, ESQ.
          MOLLY K. WEBSTER, ESQ.
4         51 Madison Avenue, 22nd Floor
          New York, New York  10010
5
              appeared on behalf of Joseph Katz, as Executor
6             for the Estate of Eric D. Emanuel, deceased.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

  1                (PROCEEDINGS held in open court before The

  2                HONORABLE JOHN MICHAEL VAZQUEZ, United States

  3                District Judge, on May 28, 2019.)

  4           THE DEPUTY CLERK:  All rise.

  5           THE COURT:  Thank you.  Please be seated.

  6      We're on the record in two matters.  They're both

  7 entitled In Re Application of Comodo Holdings Limited.  The

  8 first docket number is 18-13755.  The second docket number is

  9 19-436.

 10      Can I please have the appearances of counsel.

 11           MR. OLIVER:  Good morning, Your Honor.  My name is

 12 Matthew Oliver.  I'm with the law firm of Lowenstein Sandler

 13 LLP on behalf of the applicant, Comodo Holdings Limited.

 14           THE COURT:  Good morning.

 15           MR. OLIVER:  Good morning, Judge.

 16           MR. SCHINDLER:  Good morning, Your Honor.  Jarrett

 17 Schindler, also on behalf of the plaintiff.

 18           THE COURT:  Good morning.

 19           MS. VALLE:  Good morning, Your Honor, Lauren Valle.

 20 I'm here with Molly Webster and Christopher Kercher on behalf

 21 of Joseph Katz as the executor of the Estate of Eric Emanuel.

 22           THE COURT:  Good morning, Counsel.

 23           MR. KERCHER:  Good morning, Your Honor.

 24           THE COURT:  Both matters concern the application of

 25 28 U.S.C. Section 1782, and there's a total of three subpoenas

1    at issue.

2         In the first, Docket No. 18-13755, it is a subpoena to

3    an accountant, and there are two subpoenas at issue in 19-436;

4    one to Commerce Bank, formerly TD Bank, and also one to an

5    individual by the name of Mr. Giarusso, G-I-A-R-U-S-S-O.

6         Before we get into argument, I wanted to review the

7    applicable law as I've read it because the parties do agree on

8    the elements and the factors to consider, but there is some

9    disagreement as to how courts have interpreted some of the

10   legal requirements.

11        So under 28 U.S.C. Section 1782, there are three

12   elements that are required:

13        The person from whom discovery is sought resides or is

14   found in the district where the action has been filed.  That

15   would be the district of New Jersey.  I have not seen an

16   indication that any of the three parties sought to be

17   subpoenaed are not in the district.

18        The second requirement is that the discovery sought is

19   for use in a proceeding before a foreign tribunal.  The

20   estate -- Mr. Katz, as executor of the Estate, does take issue

21   with this element as to the second two subpoenas to the bank

22   and to the individual.

23        Then, finally, the application must be made by a

24   foreign or international tribunal or any interested person.

25   Again, I did not see that element being at issue in this case.

1          Pursuant to Supreme Court precedent under the *Intel*

2   factors, the Supreme Court has made clear that this is a

3   discretionary decision for the Court and has laid out certain

4   factors for the Court to consider in whether to exercise the

5   discretion in favor of or against an application.

6          First is whether the person from whom discovery is

7   sought is a participant in a foreign proceeding so that

8   discovery is accessible without the aid of Section 1782, the

9   nature of the foreign tribunal, the character of the foreign

10  proceedings, and the receptivity of the foreign government or

11  court to accept U.S. Federal Court assistance.

12         Third, whether Section 1782 request conceals an attempt

13  to circumvent foreign proof-gathering restrictions, and then,

14  finally, whether a subpoena is unduly burdensome.

15         As I noted, the *Intel* court case is a leading case on

16  the exercise of discretion.  The parties have cited it at

17  length.  It can be found at 542 U.S. 241.

18         Briefly, the Supreme Court then emphasized that 1782

19  authorizes but does not require a Federal Court to provide

20  assistance.  It also went on to say that interested persons

21  can extend beyond just litigants.

22         As I indicated, it does not seem to be an issue here

23  because Comodo Holdings is a litigant in the underlying BVI,

24  British Virgin Islands, action.

25         Tribunal extends beyond just foreign courts to also

1  quasi-judicial agencies.  Again, that does not seem to be an

2  issue here because this matter is being litigated in the BVI

3  courts.

4      One of the key holdings -- and the parties do litigate

5  this issue -- is the Supreme Court rejected a foreign

6  discoverability rule.  They noted that the plain language of

7  1782 protects privileged information but didn't go so far as

8  to say that the information has to be subject to foreign

9  discovery.

10      Among other cases cited by the parties is the *Esschem*

11  case, E-S-S-C-H-E-M, 390 Fed.Appx. 88, a Third Circuit case

12  out of 2010.  The underlying case was in Germany over

13  misappropriation of trade secrets.

14      In that case the German civil procedure did not offer a

15  mechanism for general pre-trial discovery as we have in the

16  United States.  Critically, for example, a party could not get

17  a document unless the party provided information specifically

18  about the document which really put the party in a Catch-22

19  because if they had that specific information, then normally

20  they would have the document itself.

21      But that did not provide a roadblock to the party

22  seeking relief under 1782.  Among other things, the Third

23  Circuit said there was no indication that the German court

24  would not permit the evidence from the United States to be

25  used.

1          To the contrary.  The German court at that point had

2     postponed the proceeding to see if the information could be

3     obtained in the United States.

4          The parties also cite to the *Lazaridis*,

5     L-A-Z-A-R-I-D-I-S, case which is out of this district in 2011,

6     865 F.Supp.2d 521.  There the court did grant the motion to

7     quash a subpoena finding that it was unduly burdensome, it was

8     extremely broad and unconstrained by time, and there was also

9     a lack of clear relevance.

10         Another case cited by the parties is the *Rivada*

11    *Networks* case, R-I-V-A-D-A, out of the Eastern District of

12    Virginia in 2017, 230 F.Supp.3d 467.

13         Among other things, the *Rivada* court found that the

14    party opposing the subpoena did have standing because they

15    could demonstrate an injury in fact because the other side --

16    who was seeking the use of 1782 -- any information they would

17    obtain could be used against a party, so that would sustain an

18    injury in fact.

19         The injury was fairly traceable to the 1782

20    conduct.  The injury was likely to be redressed by a favorable

21    judicial decision because it would permit the party to

22    question a witness at a deposition as well as review

23    subpoenaed documents.

24         Similarly, the court found that the party could

25    intervene finding that it was well settled that a party

 1   against whom information is going to be used has standing to

 2   challenge under 1782 and the Federal Rules of Civil Procedure

 3   citing to the then Judge -- before she was Justice -- Ginsburg

 4   decision in the D.C. circuit in 1989.

 5             As to Rule 24, the court found that there was no

 6   doubt that Rule 24(b) applied and probably 24(a).  The court

 7   also noted because in the first application here under the

 8   Docket No. 18-13755 that it's often done by ex parte, and in

 9   Footnote 9 collected the cases that permitted it but noted

10   there were protections as to why it was permitted ex parte.

11             For example, under Rule 45 and other pertinent

12   rules, there would be notice to each party to the action

13   before the subpoena is served on any third party.  That is

14   what occurred here.

15             Finally, there the court decided that the party

16   could participate in a deposition and review the subpoenaed

17   documents.

18             Just two more cases before we get to the argument.

19   Another case widely cited by the parties is the *California*

20   *State Teacher's Retirement System* case out of this district,

21   it was Judge Chesler, in 2017.  Again, that was another German

22   suit for securities fraud.

23             The court, among other cases, relied upon the

24   *O'Keeffe* decision.  That's O, apostrophe, K-E-E-F-F-E, out

25   of the Third Circuit 2016, another Federal Appendix case

1    646 F.Appx. 263.

2            Among other things, the court indicated that even

3    though the American company of Volkswagen was not a party to

4    the German suit, the plaintiffs did seek documents in the

5    United States and the German civil procedure did not permit

6    general pre-trial discovery.  As I've already indicated, you

7    need to make very specific requests for documents before

8    you're able to obtain them.

9            The court also found that as to circumventing

10   foreign proof-gathering restrictions the German courts often

11   welcome United States evidence as part of their proceedings

12   and, as was indicated, there's no exhaustion or

13   quasi-exhaustion requirement.

14           In other words, a party does not have to seek aid

15   in the foreign tribunal first before invoking 1782.

16           As to *Intel* factor four, whether the request is

17   unduly intrusive or burdensome, the court says we essentially

18   follow Rule 26 and Rule 45 of the Federal Rules of Civil

19   Procedure when conducting that analysis.

20           Finally, what's been referred to as the

21   *International* case because that was the name of one of the

22   parties, it's an In Re Application For Discovery and Use in

23   Foreign Proceedings 2019 case by Judge McNulty out of this

24   district.

25           The underlying case there was a Brazilian action.

1    Judge McNulty did a thorough review of the law.  As to whether

2    you're a participant in a foreign proceeding, he indicated it

3    means whether a foreign tribunal has authority over a party.

4    It does not mean that you have to review a foreign tribunal's

5    law as to discovery or otherwise.

6         One of the issues is that the courts have been

7    clear in the United States that this procedure is not meant to

8    have U.S. courts attempting to interpret foreign law.

9         As to the second *Intel* factor, which is also

10   raised here, whether a foreign tribunal is receptive to

11   United States evidence, Judge McNulty indicated that the

12   parties indicating that the foreign tribunal would not be

13   receptive to the United States evidence needs to show

14   authoritative proof that a foreign tribunal would reject

15   evidence obtained by way of 1782.

16        That comes from either the foreign country's

17   judicial, executive, or legislative declarations.  And

18   international treaties can tip in favor of receptivity.

19        Critically it does not mean an admissibility

20   standard in a foreign court.  Again, the United States courts

21   have warned United States judges not to tread into those

22   areas.  It's just general receptivity, not admissibility.

23        Again, he also relied upon the *O'Keeffe* case as

24   did Judge Chesler.  He also reiterated there is no foreign

25   exhaustion requirement, and he also reiterated that the fourth

1   *Intel* factor follows the same analysis under Rule 26 and

2   Rule 45.

3          So turning first to the subpoena on Mr. Untracht,

4   U-N-T-R-A-C-H-T, we'll deal with the 18-13755 case first.  The

5   case here was filed in the BVI in 2013.

6          It appears first that the Estate -- Mr. Emanuel

7   passed away in approximately 2006.  His Estate first went to

8   confirm the shares to an arbitration and in response Comodo

9   filed suit in the BVI against Renaissance, which was

10  Mr. Emanuel's company, and against Mr. Katz who is the

11  executor for Mr. Emanuel.

12         There was ex parte application at Docket Entry 1

13  on September 11th of 2018; Docket Entry 2, on October 11,

14  2018, I granted it.  At the time the information presented

15  from Comodo Holdings appeared to be there were tax returns in

16  Mr. Untracht's possession as well as one box of documents

17  based on the information provided from the Estate's BVI

18  counsel.

19         Once the parties started communicating directly

20  with Mr. Untracht here in the United States, it turned out

21  that there was a lot more potential information, over 20 boxes

22  of documents.  I believe 4 of which Comodo has indicated they

23  would like to review.

24         So the parties -- I have the Estate's motion to

25  intervene -- re-open the matter, leave to intervene,

1  participate in discovery at Docket Entry 3.  Docket Entry 6

2  is Comodo's opposition, the reply filed on January 2nd of 2019

3  by Comodo, and then the estate filed at Docket Entry 11 a

4  supplemental letter with a BVI ruling in April of this year

5  2019 followed up by an opposition letter at Docket Entry 12.

6         Let me hear -- first before we again, I just want

7  to let the parties know that unfortunately in this district we

8  have a high, high number of judicial vacancies, which means

9  our docket is very -- each individual judge's docket is very

10 extensive.

11        I know that the current trial date in the BVI

12 action is scheduled for June 25th of 2019.  Going forward, if

13 you ever need immediate attention to a matter because you're

14 running up on another trial date, I would say the best

15 practice is after you file the motion just file a letter

16 indicating this is time sensitive due to another matter and

17 then follow up with a telephone call to the law clerk.

18        I'll do my very best, despite the docket that we

19 have, to rule on it quicker.  It's just that when we have so

20 many motions pending, unless somebody highlights it for us,

21 we're probably not going to pick it up right away that there's

22 another trial date pending in a foreign jurisdiction.

23        So let me hear first -- my inclination, as I

24 indicated on the phone last week and having read all the

25 papers, is to grant the leave to re-open, to grant leave to

1  intervene.

2        I know that Comodo has concerns that the Estate

3  waited too long because initially, based on the correspondence

4  attached through e-mails, Comodo believed the Estate was

5  participating in the process with Mr. Untracht but then about

6  two months later filed the current motion.

7        That being said, while I understand there's a

8  concern, most of the cases that I've read indicate that if you

9  do it within a few months it's still going to be timely.

10        Obviously, I agree with Comodo that it could have

11  been sooner.  I also agree with the Estate that Comodo's

12  application could have been sooner.

13        I'm inclined to permit the Estate -- to grant the

14  motion to re-open, the leave to intervene, and then get to the

15  merits of the subpoena.

16        Let me hear first from the Estate because -- well,

17  if you want to go first, Mr. Oliver, you can do so.

18        MR. OLIVER:  Sure.  Thanks, Judge.  I think I may be

19  able to cut through a couple of issues, as well.

20        THE COURT:  Okay.

21        MR. OLIVER:  First of all, I want to thank Your Honor

22  for bringing this in so quickly.  We really appreciate it.

23        I also want to let Your Honor know we heard you

24  loud and clear from the conference call about making some

25  good-faith attempts to resolve this which we endeavored to do.

1    Unfortunately, that didn't work out.

2         Notwithstanding that, Judge, we are prepared to consent

3    to intervention in the Untracht case.  We're prepared to

4    withdraw the subpoena to Mr. Giarusso.

5         So, really, all I think Your Honor has to deal with

6    today is the subpoena to TD Bank and the subpoena to

7    Mr. Untracht.  I hope that that narrows things a little bit.

8         So, Your Honor, with respect to the subpoena to

9    Mr. Untracht, you know, Your Honor had indicated on the call

10   that you were initially inclined to allow production of the

11   tax returns for a certain period of time.  We appreciate that.

12   We certainly think that's proper.

13        However, we don't think that goes quite far enough,

14   and I'll be happy to explain to Your Honor why that is.

15        Tax returns are really just a proxy for financial

16   status; right?  Mr. Emanuel's financial status is what's key

17   at issue in the BVI action; his wealth, sources of income, his

18   assets, how he paid his bills, what he did with all the money

19   that he was taking in from people who intended to invest in

20   Comodo.

21        These are the key issues in the BVI case.  That's why

22   the BVI judge granted Comodo's application to get Emanuel's

23   tax returns.

24        We've learned a lot in the months since we filed this

25   application.  Among other things, after lengthy delay, the

1   Estate received and turned over to us information that they

2   got from the IRS indicating that the IRS no longer has any

3   copies of any tax returns filed by Mr. Emanuel.

4           I'm not sure what's in Mr. Untracht's files, but we

5   certainly know the IRS doesn't have any returns.  So together

6   with that, Comodo followed up and filed an application in the

7   BVI seeking to compel the Estate to get Mr. Emanuel's New York

8   state tax returns because he was a New York resident during

9   the years in question.

10          The Estate consented to seek the New York state tax

11  returns for the years 1998 through 2006, and they received the

12  information and they turned it over to us.  New York state

13  doesn't have tax returns for Mr. Emanuel but they do have tax

14  transcripts.

15          What they provided back showed that Mr. Emanuel had

16  filed New York returns in 1997 and 1998 but he hadn't filed

17  any tax returns with New York state for '96 or for '99 through

18  2006, the year he died.  Moreover, the 1998 return showed

19  income of $31,000.

20          What we have, Judge, is a case where the same person

21  who is representing himself to Comodo as being able to invest

22  tens of millions of dollars of his own money in the company is

23  making $31,000 a year and then not filing returns for the last

24  chunk of his life.

25          So, you know, this is just the kind of person that

1    we're dealing with in the situation that we're in, Judge.

2    This is a supposedly wealthy, reputable Wall Street investment

3    banker with almost no income and -- you know, either zero

4    income, not enough to file returns, or he's evading income

5    taxes for a substantial period of time.

6         In addition, Judge, we've done a little digging

7    ourselves, and we found a couple of tax court cases that

8    Mr. Emanuel actually filed against the IRS in 2005.  These are

9    documents that we obtained in the public record.

10        What they show is that as of April of 2005 Mr. Emanuel

11   had received two deficiency notices from the IRS for the

12   tax years 2000, 2002.  Apparently his IRA custodian had

13   misclassified some kind of investment and forwarded some

14   documents to the IRS that triggered -- you know, that put him

15   on their radar.

16        What we learned from the tax case is that as of

17   April 2005 Emanuel had not filed returns for 2000 or for 2002.

18   We don't know about the other years.

19        He also resolved those cases for $13,000 in one year

20   and $686 in the other year indicating he either had almost no

21   income at all or he was not fully disclosing his income to the

22   IRS.

23        What the tax records also show, Judge, is that

24   Mr. Untracht was involved in those tax court cases.  That's

25   another area that really sort of heightens our concern and

1    makes us very interested in seeing what is in Mr. Untracht's

2    files, Judge.

3         As I said, the key issues in the BVI action are

4    Mr. Emanuel's wealth, his use of funds, his assets, what he

5    did with the money, and how he treated the money that he was

6    taking in from people who intended to invest in Comodo.

7         You know, we believe Mr. Untracht has documents that

8    will shed light on these issues.  He's identified one box that

9    he thought was the most relevant.

10        He's got an archive list with a bunch of stuff.

11   Four additional boxes, to us, looked potentially relevant, but

12   certainly the one box that he self-identified is really ripe

13   for discovery.

14        Mr. Untracht also told me he had e-mail correspondence

15   with Mr. Emanuel that's still on his system and he has

16   electronic documents, so we certainly want to make sure that

17   any discovery is very targeted.

18        We don't want to impose undo burdens on Mr. Untracht or

19   on the Estate but there's -- you know, there's enough of a

20   sort of nucleus of important information that we think

21   Mr. Untracht has and that we think we're entitled to get

22   access to.

23        Now, we think the information -- the documents that

24   Mr. Untracht has are going to shed light on all these issues.

25   We think the BVI court will want to hear this information at

1    trial.

2         If we're wrong about that and the BVI court has no

3    interest in it, then the BVI court will not admit it.  There

4    will be no, you know, negative consequences for anybody.

5    That's the BVI court's decision to make.

6         I would also note, Judge, I have spoken to

7    Mr. Untracht.  He has never had an objection since day one

8    from producing these documents.  The objections are only

9    coming from the Estate.

10        Again, I said we consent to intervention.  We do.  But

11   I just want to give Your Honor a word about why we opposed

12   intervention in the first place.

13        It's not that we thought they took too long.  What

14   happened here, Judge, is we served the subpoena, I spoke to

15   Mr. Untracht, I was working with the Estate's prior counsel on

16   a privilege review protocol, and then what happened, Judge, is

17   they went in and they looked at this box.  They looked at this

18   box that Mr. Untracht has in his conference room and then

19   everything changed.

20        So that really put Comodo on high alert, Judge; right?

21   They were willing to go along with production, willing to turn

22   it over.  Once they look at it, no, all bets are off.  We're

23   going to fight this thing tooth and nail.

24        Judge, I'm concerned that there are documents in that

25   box that are highly material, that are really relevant to the

1   BVI case, and I think Comodo is entitled to them under the

2   factors that you laid out.

3          THE COURT:  Let me just ask you, you want to just

4   rely on your papers as to TD Bank?  I was going to do them

5   separately, but now that you've agreed to withdraw for

6   Mr. Giarusso, would you like to address the Commerce/TD Bank

7   issue?

8          MR. OLIVER:  Yes.

9          MR. KERCHER:  Your Honor, if I may just try to

10  simplify this, we'll actually consent to withdrawing our

11  opposition to the TD Bank subpoena just to make everyone's

12  life easier and save some words.

13         THE COURT:  Okay.  Great.  So that means withdrawing

14  on Mr. Giarusso, no opposition on the Commerce Bank.  That

15  will be entered.

16        So now I've heard from you as to Mr. Untracht's

17  documents.  Let me hear from your adversary.

18         MR. OLIVER:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         MR. KERCHER:  Thank you, Your Honor.  Good morning.

21  I, too, appreciate Your Honor's time devoted to this matter

22  right after the holiday.  I share with Mr. Oliver that we did

23  make good-faith efforts to try to resolve this last week --

24         THE COURT:  I appreciate that.

25         MR. KERCHER:  -- but unfortunately we couldn't.

1       THE COURT:  I certainly get the sense that this is a

2  highly contested case.

3       MR. KERCHER:  Just so you understand, I do want to

4  set the stage a little bit more because Mr. Oliver gave you a

5  slice of what the case in BVI is about.  That's from their

6  perspective what the case is about, but I want you to

7  understand what the case is really about.  Okay?

8       Mr. Emanuel was a business partner in this software

9  company called Comodo.  At the time he died, it was still a

10  small start-up but he had close to half the company, half the

11  equity, either directly or through his fund Renaissance or a

12  third entity called Tech IP.

13       After he passed away, the managers of Comodo wiped him

14  off the shareholder registry, just deleted him.  Okay.  Since

15  that time they have done everything they can to obfuscate and

16  delay and make sure that the day of reckoning never comes

17  because they're spending Comodo's money, which if we're right

18  is actually half or somewhere around there of Mr. Emanuel's

19  money.

20       We think these 1782 applications, these three as well

21  as one that was filed early 2019 in Florida, are all part of

22  that delay strategy.  I'll get to this because it's core to

23  the *Intel* factors.

24       The case isn't really about whether Mr. Emanuel is a

25  man of wealth.  That's the defense they have come up with to

1    justify stealing like a billion dollars or hundreds of

2    millions of dollars worth of shares.

3          The case is really about whether or not he was a

4    shareholder.  Whether or not he as a merchant banker made a

5    certain amount of income in any given year is not dispositive

6    of whether he could go out and raise capital from other people

7    for this entity Renaissance.

8          If there's a dispute among Renaissance shareholders,

9    that's not Comodo's to pick up.  But that's their defense.

10   That's what's going on at BVI.

11         I don't want Your Honor to have a misperception that

12   this case is about Mr. Emanuel's wealth.

13         Let me turn to the 1782 with respect to Mr. Untracht.

14   This is key.  There are two *Intel* factors I think that really

15   matter here.

16         The first is a circumvention venture factor.  Okay?

17   Rarely do you see a case where the circumvention is this

18   clear.

19         My friends at Comodo in the BVI went to the BVI court

20   with, among other requests, two.  The first one was:  We want

21   the tax returns from '98 to '02, four tax returns.

22         BVI court said approved.  It's in the transcript we

23   provided to you.

24         The next request was:  And we want the box.

25         BVI court, not approved.  Having been rejected by the

1    BVI court, it's interesting to come to this court to ask for

2    that same box and say the BVI court can sort it out.  That

3    goes core to circumvention.

4         The next prong that I think is totally relevant here is

5    receptivity.  Again, rarely do you see a court, especially

6    using, sort of, the English manner that English court's write

7    in, when you read that decision, that's a decision about

8    whether to permit -- and this is attached to our letter and

9    previous letter.  It was a decision about whether to admit an

10   amendment of Comodo's complaint.

11        The court in that decision in paragraph 81 went out of

12   its way -- okay, this wasn't before the court.  It went out of

13   its way to note that it seems that Comodo has been engaged on

14   an evidence-gathering exercise in the U.S.

15        It said with respect to that it would be prejudicial

16   at this late stage to be embarking on a further round of

17   evidence.  It could threaten the trial date, which both

18   parties say they have no intention of doing, but it's not

19   inconceivable that applications will be mounted on the back of

20   my grant of permission to amend for disclosure and other

21   evidence.

22        So what the BVI court I think is telling us about as

23   clearly as it can is this is going to open a mess for me.  If

24   I all the sudden get all this new evidence going back years,

25   the '90s, early 2000s, dumped on me, who knows where it leads.

1        Maybe the evidence is good for Comodo; maybe the

2   evidence is good for Mr. Emanuel.  Frankly, it's probably a

3   little bit of A, a little bit of B.  Does lead to requests

4   now?  We need to depose this person and now we need to go

5   chase this bank.

6        You're just opening a Pandora's box.  At some point

7   there needs to be a finality.

8        The BVI court is saying:  We've got to keep this trial

9   date.  We're not moving this trial date.  Embarking on a

10  further round of evidence is only going to make my life a lot

11  harder.

12       Respectfully, Your Honor, I think those two *Intel*

13  factors rarely do you see cases where so clearly you have a

14  circumvention of a foreign discovery ruling and so clearly

15  commentary by the foreign court about receptivity.

16           THE COURT:  Thank you.

17           MR. KERCHER:  Thank you, Your Honor.

18           THE COURT:  Thank you.

19       Would you like to reply?

20           MR. OLIVER:  Very briefly, Judge.

21           THE COURT:  Sure.

22           MR. OLIVER:  Thank you.  Two quick points.  With

23  respect to counsel's argument about circumvention, there's no

24  attempt at circumvention here.

25       Judge, we have learned significant facts about

1   Mr. Emanuel's tax return practices since we were last before

2   the BVI court.  I think this is a very different scenario we

3   have now.

4        As I indicated previously, tax returns are a proxy for

5   financial status, and the BVI judge assumed that tax returns

6   would have been filed given what the Estate had been saying

7   about Mr. Emanuel's reputation and career and everything else.

8        With respect to the receptivity argument, there's been

9   no delay here by Comodo.  Comodo is not seeking to delay.

10  Comodo has been seeking to press forward on all these

11  applications specifically so the BVI trial will go off as

12  scheduled.

13       Moreover, you have our position in the letter with

14  respect to the denial of the amendment application, but I'd

15  just point out, Judge, the judge who decided that case is not

16  the trial judge.  You know, we shouldn't infer what the trial

17  court might do and say from that opinion, you know,

18  necessarily.

19       Thank you, Your Honor.

20        THE COURT:  Thank you.  I'm really ruling on the

21  subpoena to Mr. Untracht, and I appreciate the parties'

22  efforts.

23       Comodo has withdrawn the request for the subpoena to

24  Mr. Giarusso, and the Estate has agreed not to oppose the

25  subpoena to Commerce Bank, so I will enter an order

1   accordingly on those two issues in the Docket No. 19-436,

2   which leaves me to determine the correct decision in

3   Docket No. 18-13755.

4        Just for purposes of the record, I have read the

5   opinion that counsel just addressed from the BVI.  It was

6   attached to both supplemental letters in both of the matters

7   currently before the Court.  The opinion itself is over

8   31 pages, and it was issued in April of this year.

9        There were two comments that the Estate pointed the

10  Court to.  One was in paragraph No. 2 of what's entitled "The

11  Judgment" about the odd thing about the application is the

12  timing of it -- I'm going to paraphrase -- in light of the

13  trial date.

14       Then in paragraph 81, which really was the focus of the

15  Estate's argument, concerning prejudice to the defendants if

16  amendments are allowed, again, that was amending the actual

17  pleading, from my understanding, but it does certainly mix

18  with the current issues before the Court.

19       The court in the BVI said:  While I agree with

20  Mr. Francis that the extent of the prejudice asserted by

21  defendants is probably exaggerated, it seems that Comodo has

22  been engaged on an evidence-gathering exercise in the U.S.

23  partly to try to obtain further evidence to support its case

24  as to the role of Renaissance.

25       I do not see why the defendant should not also be

1    entitled to fully explore the issue of Renaissance's role by

2    seeking evidence from other investors who obtained their

3    shares through the defendants.

4        The amendments bring this point sharply into focus, and

5    so it would be prejudicial at this late stage to be embarking

6    on a further round of evidence.  It could threaten the trial

7    date, which both parties say they have no intention of doing,

8    but it is not inconceivable that applications would be mounted

9    on the back of my grant of permission to amend for disclosure

10   or other evidence.

11       So the concern certainly was as to amending.  I'm go to

12   use the word "leading," and it's a different terminology used

13   in the BVI.  And that may not be the correct analogy in the

14   United States courts, but the court certainly expressed its

15   concerns.

16       Again, turning to the relevant background as to this

17   particular issue, David Untracht, who we have been talking

18   about, was, among other things, an accountant for Mr. Emanuel

19   when Mr. Emanuel was alive.

20       Initially in December of 2017, the BVI court ordered

21   that Mr. Emanuel's tax returns from 1998 through 2002 be

22   produced if located and produced by Mr. Untracht and a

23   February of 2018 order denying the request by Comodo

24   that Mr. Katz as the executor of the Estate serve an affidavit

25   as to the contents of the box and disclose any relevant data.

1       Unfortunately, the court -- while it's clear the court

2   denied their request, I'm assuming just due to the nature of

3   the request the court was dealing with did not provide an

4   explanation as to why it was denying the request.

5       I do agree that upon that denial it would have behooved

6   Comodo -- or even before that, because there is no foreign

7   exhaustion requirement, it would have behooved Comodo to file

8   an application under 1782 instead of waiting several months.

9       But, as I said, both parties could have moved somewhat

10  quicker as to this particular application, but I'm not finding

11  any undo delay to deny the application.

12      I am concerned about the trial in the British Virgin

13  Islands.  It's now scheduled for June 25 of 2019.  None of my

14  rulings today intend to interfere with that trial date.

15  That's, first of all, solely within the purview of the BVI

16  court.

17      I would never want to overstep my bounds to indicate in

18  any manner that I could affect the trial date, but at the same

19  time I want to make it clear that I certainly respect the BVI

20  courts and their decisions as to how to control their docket,

21  and I do not want to do anything -- anything I say or do to

22  indicate that I am suggesting that the trial date needs to be

23  moved.  That's solely within the purview of the BVI court.

24      When looking at the issues, the first factor -- these

25  are the elements that I must decide, and that's the person

1   from whom discovery sought resides or is found in this

2   district.  Again, it doesn't appear there's any dispute that

3   that applies to Mr. Untracht.

4         That the discovery sought is for use in a proceeding

5   before in a foreign tribunal.  It doesn't appear as though

6   that's hotly disputed, either, that this information from

7   Mr. Untracht would be for use.

8         Again, I'm not passing on either party's theory of the

9   case.  I know that Comodo has a theory that Mr. Emanuel did a

10  few things they thought were inappropriate, that he issued

11  shares of Renaissance instead of Comodo or when he did give

12  shares of Comodo he did not give the full amount of shares

13  that would equate to the value he received, but I understand

14  that's just a theory.

15        At the same time, I understand the Estate's position

16  which is really this is going to be an issue among the

17  shareholders as to who owns what of Comodo shares.

18        I'm not passing on the merits, but I need to look at

19  those theories to determine whether it's appropriately sought

20  in this case under Section 1782.

21        Certainly, Comodo does fit the position of being an

22  interested person.  They are a litigant in the underlying BVI

23  action.

24        As to the discretionary factors, first is whether the

25  person from whom discovery is sought is a participant in the

1 foreign proceedings so that discovery is accessible without

2 the aid of Section 1782.

3       The Estate is a litigant in the underlying action.

4 Even though it's being litigated in the BVI, it does seem as

5 though that the BVI could order persons before it as litigants

6 to produce certain information within their possession,

7 custody, or control regardless of where in the world that

8 information resides.

9       The nature of the foreign tribunal, the character of

10 the foreign proceedings, and the receptivity of the foreign

11 government to accept U.S. Federal Court assistance, on that

12 general issue I have not seen any information that the BVI

13 courts would not be receptive to U.S. Federal Court

14 assistance.  Again, with the understanding that this Court is

15 not looking to interfere with the BVI court's proceedings.

16       Whether a request conceals an attempt to circumvent

17 foreign proof-gathering restrictions and whether the subpoena

18 is unduly burdensome, turning to the second factor, unduly

19 burdensome, I have not seen any indication from Mr. Untracht

20 that he finds it unduly burdensome to produce information.

21       It does seem as though there is a much larger amount of

22 information available than originally first thought when the

23 subpoena was sought.  At that point it was certain years' tax

24 returns and one box of documents.  It turns out that he has

25 over 20 boxes of documents that may be responsive.

1        Does it attempt to circumvent foreign proof-gathering

2   restrictions?  It's certainly true that the BVI court denied

3   the request from Comodo to order Mr. Katz to produce that

4   information, and it's also true that there was a recent

5   expression that there were concerns about the trial date in

6   light of the information being sought.

7        But at the same time, there was no reasoning behind it,

8   and using the German courts by way of analogy, even if it

9   can't be sought -- and that was one of the issues I asked the

10  Estate to address in that in the BVI at least the Estate

11  seemed to believe that they would not be in constructive

12  possession of Mr. Untracht's documents in the BVI, but there

13  is certainly a good-faith argument that they would be in

14  constructive possession as to at least certain of the

15  documents.

16       Again, those would be documents Mr. Emanuel

17  provided directly to Mr. Untracht and any filings done on

18  Mr. Untracht's behalf.  I'm not saying all of the information

19  would be in their constructive possession.

20       I think it would be akin to an attorney work product

21  issue where there might be work papers from Mr. Untracht that

22  are his documents.  They may be discoverable, but it doesn't

23  mean the Estate would necessarily have a right to those

24  documents.

25       But there is a difference, apparently, between the

1  United States law and the foreign law on this particular

2  issue.

3         Outside of trial date concerns, there has not been an

4  indication that the BVI court will legally prohibit any

5  evidence gained in the United States to be used in that

6  proceeding.

7         Of course the court has its discretion, I assume, and

8  it may find that due to timing it may not permit it, but

9  there's no legal prohibition to permit evidence gathered in

10 the United States to be used in the BVI proceeding.

11        Again, in analyzing the factors, what I'm going to

12 conclude at this time using my discretion is the following as

13 to the subpoena on Mr. Untracht.  I say this with the

14 following consideration in mind:

15        I will narrow the subpoena to produce the tax returns

16 that have previously been ordered by the BVI court.  That's

17 the 1998 through 2002 tax returns of Mr. Emanuel.  Again, if

18 Mr. Untracht is actually in possession of those documents.

19        As indicated, it appears that -- well, 1996 would be

20 outside the scope, but between 1999 and 2006 there were no

21 returns.  At least that's according to -- I'm sorry.  That's

22 the New York state tax returns.

23        As to the IRS, I do not know if there were tax returns,

24 but to the extent there were tax returns between 1998 and

25 2002, I will permit the subpoena for that information.

 1       I will permit the subpoena to extend to the one box of

 2   documents that was previously identified, and I will certainly

 3   give the Estate an opportunity to review that box first for

 4   privileged materials if they believe any privileged materials

 5   exist within that box before producing it.

 6       My hope is that given this limited quantum of

 7   information, the one box and several years of tax returns, it

 8   will not impact the trial date.  I will say, though, if the

 9   trial date does get moved, I will entertain an additional

10   application under 1782 from Comodo to see if they want to seek

11   additional information from Mr. Untracht because it does

12   appear this information clearly meets the United States

13   federal standard that it's reasonably calculated to lead to

14   the production of admissible evidence or discovery of

15   admissible evidence.

16       At the same time maybe -- well, I shouldn't speculate,

17   but the speculation would be because the BVI courts have

18   a different view on constructive possession than the

19   United States courts that certainly could have impacted their

20   decision.

21       But my understanding -- and I appreciate the

22   supplemental briefing from the Estate.  While they're not

23   100 percent clear, they do think at least under New Jersey law

24   there is constructive possession as to certain documents.

25       If that understanding was clear, I don't see why the

1  BVI court would have had ordered if it was produced by

2  Mr. Untracht.  The better order would have been to order the

3  Estate to produce the documents that it was in constructive

4  possession of.

5        So I will narrow the subpoena in that regard.  It will

6  be to the one box.  I am going to refer to the box by way of

7  the e-mail that the BVI counsel did so that -- I think that's

8  the best description I have at this time and as to those

9  years' tax returns.

10       If the trial date does get moved again, I will also

11  note in my order that it's not the intention of this Court to

12  affect the trial court date.  I'm trying to make a decision so

13  that it's a limited realm of information that hopefully can be

14  reviewed and produced within a few weeks, hopefully two weeks,

15  so as to not delay the trial date.

16       Then, of course, the admissibility is up to the BVI

17  court.  I do not know if the BVI court, even if it might

18  otherwise find it admissible, will permit it at this stage;

19  but that will be an issue for our courts in the BVI.

20       Is there anything else on behalf of Comodo?

21        MR. OLIVER:  Just very briefly, Judge.  You indicated

22  a two-week time frame for production of the materials.  I

23  guess I was just wondering is your order going to have a date?

24       I would request that it be, I guess, the Friday after

25  this Friday.  That might be a little tighter than two weeks,

 1  but we really are under intense time pressure for the BVI

 2  case.

 3          THE COURT:  Sure.  I can put a return date down on

 4  the production from a week from this Friday, and that will

 5  give the Estate not quite two weeks obviously but over 10 days

 6  to review the documents.

 7        If there's any privileged information, they can do a

 8  privileged log for you and then you can produce it.  Okay?

 9          MR. OLIVER:  Thank you, Your Honor.

10          THE COURT:  As I indicated, Counsel, I know this has

11  been hard fought.  I know counsel here has not been fighting

12  it in the BVI.

13        I also understand if the trial date gets moved the

14  Estate may be in a position where they want information here

15  in the United States, so I'm making these final rulings

16  without prejudice.

17        If the trial date holds, it holds.  If it doesn't and

18  the parties believe they need additional information, just

19  please file it as a related case to these two cases because

20  then I'll be familiar with the facts and we won't have to

21  start from scratch with a new judge.

22          MR. KERCHER:  Understood.

23          THE COURT:  Okay.  Again, Counsel, given where we are

24  unfortunately with our judicial vacancies, if you're ever in a

25  position where it's not going to be on the normal motion

1    track, just please file that or contact the clerk, and I'll do

2    my best to get on it right away.

3             MR. OLIVER:  Appreciate that, Judge.

4             THE COURT:  Thank you, Counsel.

5             MR. KERCHER:  Thank you.

6              (Which were all the proceedings had in

7               the foregoing matter on said day.)

8                          *          *          *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE

2

3        I, **Lisa A. Larsen, RPR, RMR, CRR, FCRR,** Official Court

4    Reporter of the United States District Court for the District

5    of New Jersey, do hereby certify that the foregoing

6    proceedings are a true and accurate transcript of the

7    testimony as taken stenographically by and before me at the

8    time, place, and on the date hereinbefore set forth.

9        I further certify that I am neither related to any of the

10   parties by blood or marriage, nor do I have any interest in

11   the outcome of the above matter.

12

13

14

15        */S/Lisa A. Larsen, RPR, RMR, CRR, FCRR,*

16        Official U.S. District Court Reporter

17

18        DATED this May 30, 2019 ~

19

20

21

22

23

24

25